**CAMARINOS LAW GROUP, LLC**
411 Hackensack Avenue, 2nd Floor
Hackensack, New Jersey 07601
Telephone: (201) 509-5000
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACQUELINE BORISH SINCLAIR, individually and in her capacities as ADMINISTRATOR and ADMINISTRATOR *AD PROSEQUENDUM* of THE ESTATE OF EDWARD F. SINCLAIR, <br><br> Plaintiffs, <br><br> v. <br><br> TOWNSHIP OF MAHWAH, WILLIAM LAFORET, individually and in his official capacity as the Mayor of the Township of Mahwah, JAMES BATELLI, individually and in his official capacity as the Chief of Police of the Township of Mahwah, John Doe 1 and John Doe 2. <br><br> Defendants. | Civil Action No. 16-01568 (MAH) <br><br><br><br><br><br> **SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY** |

Plaintiffs Jacqueline Borish Sinclair, individually, and in her capacities as Administrator and Administrator *Ad Prosequendum* of The Estate of Edward F. Sinclair, by way of Complaint against Defendants the Township of Mahwah (the "Township"), William Laforet, individually and in his official capacity as the Mayor of the Township of Mahwah, James Batelli, individually and in his official capacity as the Chief of Police of the Township of Mahwah, John Doe 1 and John Doe 2, through their attorneys, Camarinos Law Group, LLC, hereby allege:

## NATURE OF THIS ACTION

1.     This complaint involves individual, survivorship and wrongful death actions brought for (i) the wrongful suspension of Edward F. Sinclair ("Sinclair") as Director of the Mahwah Department of Pubic Works on March 9, 2015, and (ii) a series of intentional, outrageous, irresponsible, malicious, wrongful, grossly negligent, untrue, defamatory, slanderous, libelous and recklessly indifferent statements, actions, interviews, announcements, press releases and other communications, publicly and to TV, radio, print and social media of accusations of viewing and/or permitting child and/or other pornography at the workplace, by the defendant William Laforet, individually and in his official capacity as the Mayor of the Township of Mahwah, prior to, during and immediately after the  March 19, 2015 Township Council action to reinstate Edward F. Sinclair as Director of the Mahwah Department of Public Works, and (iii) the wrongful death of Edward F. Sinclair.

## JURISDICTION AND VENUE

2.     This action is commenced pursuant 42 U.S.C. §§ 1983, 1985(3), 1986 and 1988 and the First, Fourth and Fourteenth Amendments of the Constitution of the United States of America.  Jurisdiction is founded on 28 U.S.C. §§1331 and 1343(1), 1343(2), 1343(3) and 1343(4) and the aforementioned statutory and Constitutional provisions for civil rights violations.  Plaintiffs further invoke the pendent jurisdiction of this court to consider claims arising under State law, including but not limited to: (a) defamation; (b) defamation per se; (c) political retaliation; (d) failure to implement appropriate policies, customs, practices and procedures; (e) abuse of process; (f) intentional infliction of emotional distress; (g) negligent supervision; (h) tortious interference; (i) conspiracy; (j) respondeat superior; (k) violation of Constitutional Rights; (l) Wrongful Death; and (m) Breach of Contract.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c).  All actions complained of herein took place within the jurisdiction of the United States District Court for the District of New Jersey and involve Defendants within the jurisdictional limits.

4.      The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

## PARTIES

5.      The plaintiff Jacqueline Borish Sinclair is a resident of the Township of Mahwah, Bergen County, New Jersey, and the former wife of the Edward F. Sinclair who died on August 13, 2015.

6.      The plaintiff Jacqueline Borish Sinclair was appointed Administrator *Ad Prosequendum* of the Estate of Edward F. Sinclair by letters issued by the Bergen County Surrogate on October 22, 2015 and General Administrator of the Estate of Edward F. Sinclair by letters issued by the Bergen County Surrogate shortly thereafter.[1]

7.      The defendant Township of Mahwah is a municipality incorporated within the State of New Jersey, governed by the Faulkner Act with offices located at 475 Corporate Drive, Mahwah, New Jersey (the "Township").

8.      The defendant William Laforet ("Laforet") is a resident of the Township of Mahwah, Bergen County, New Jersey and is the duly elected Mayor of the Township.

9.      The defendant James Batelli is a resident of the Township of Mahwah, Bergen County, New Jersey and is the duly appointed Chief of Police of the Township ("Batelli").

---

[1]      Plaintiff Jacqueline Borish Sinclair brings this action individually and in her capacities as General Administrator and Administrator *Ad Prosequendum* of the Estate of Edward F. Sinclair and is the successor in interest to certain claims and causes of actions, as alleged and specifically set forth in this action, concerning Sinclair.  She further brings certain claims in an individual capacity.

10.     The defendants John Doe 1 and John Doe 2 are persons whose identity is presently unknown, who either together with themselves or others and/or individually, orchestrated, encouraged and/or participated in the creation, preparation or transmittal of and/or caused to be sent to the Bergen County Prosecutor's Office an undated, entirely typewritten, Anonymous Letter claiming that Edward Sinclair had engaged in the viewing of child pornography and pornography on DPW computers during and after work hours and/or were otherwise involved in the actions alleged in this complaint.

## FACTS GIVING RISE TO THE CLAIMS

11.     Edward F. Sinclair ("Sinclair") was born and raised in Mahwah, New Jersey.  At an early age, Sinclair wanted to give back to his community, and secured employment in or about May 1987 with the Township of Mahwah Department of Public Works ("DPW").  In a career spanning more than three decades, Sinclair advanced from a rank and file DPW employee, to foreman, supervisor, superintendent and, ultimately, the Director of the DPW.

12.     In or about 1995, Sinclair was promoted to be Foreman of Buildings and Grounds of the DPW.  Upon the retirement of the then Foreman for Parks and Recreation, the position was combined so that Sinclair took on the responsibility of both Buildings/Grounds and Parks/Recreation positions.

13.     Prior to Sinclair's appointment as the Director of the DPW, he served as one of two department superintendents for five years; the position immediately under Director.  He served as a supervisor for more than a decade prior to his promotion to superintendent responsible for parks, water and other DPW tasks.

4

14.     Notwithstanding his service and dedication to the DPW, Sinclair also served for more than twenty-five years as a volunteer fireman for the Township of Mahwah including several years as fire chief.  Sinclair coached little league in Mahwah for more than a decade.

15.     Sinclair was a loving and dedicated husband, father, grandfather and son, who gave selflessly to his family including his elderly parents, whom he served as a day to day caretaker and supporter, visiting them daily to care for their every need.

16.     In or about May 2012, Sinclair commenced a campaign to be elected Mayor of the Township of Mahwah and to challenge defendant Laforet, the incumbent Mayor of the Township in the November 2012 election (the "2012 Campaign").

17.     The 2012 Campaign was a hotly contested election involving vicious allegations and disclosures of marital infidelities, drug abuse and other improprieties, and Sinclair's criticisms of the record of the incumbent Mayor, defendant Laforet.  On November 6, 2012, Sinclair lost the election to the Mayor.

18.     Subsequent to the 2012 Campaign, the defendant Laforet, individually and in his capacity as the Mayor of Mahwah, and the defendant Batelli, individually and in his capacity as the Police Chief of Mahwah, commenced a course of conduct of retaliatory action and conspired together, jointly and severally against Sinclair (the "Retaliatory Actions"), including without limitation, the following:

        a.     In or about January 2013, Laforet terminated Sinclair's annual special compensation of $6,000 per annum for serving as the licensed sewer operator for the Township, a license and qualification which was not previously held by any employee of the Township;

        b.     In or about May 2014, Laforet, contrary to previous policies, customs, practices and procedures of the Township, engaged the services of a municipal recruiter known

5

as Jersey Professional Management and otherwise widely circulated advertisements in order to fill the position of director of the DPW in an attempt to bypass the selection and promotion of Sinclair to fill this position;

c.       In or about July 2014, Laforet and Batelli, contrary to previous policies, customs, practices and procedures of the Township, conspired together in an attempt to circumvent the selection of Sinclair by Jersey Professional Management to fill the position of Director of the DPW by urging instead the selection of Vincent J. Caruso, a former police chief of the Borough of Lodi as well as a close personal and family friend of Laforet and Batelli, despite Vincent J. Caruso's complete lack of any prior experience, training or licensing is customarily required to qualify for and be hired for the position of a director of the department of public works of a major municipality in Bergen County;

d.       In or about July 2014, Laforet and Batelli, contrary to previous policies, customs, practices and procedures of the Township, conspired together in an attempt to force Sinclair to fill the lesser and deputy position of superintendent of the DPW with Vincent J. Caruso, a former police chief of the Borough of Lodi as well as a close personal and family friend of Laforet and Batelli, despite Vincent J. Caruso's complete lack of any prior experience, training or licensing which would otherwise be required to qualify for the position of a superintendent of any department of public works of a major municipality in Bergen County;

e.       Prior to May 2015, Laforet and Batelli, contrary to previous policies, customs, practices and procedures of the Township, failed to take any action regarding the inappropriate usage of computers by a police officer of the Mahwah Police Department where pornographic matters were brought up on one of the two computers at the police department dispatchers station resulting in one of the computers being disabled by a virus.  Although this

infraction was reported by at least one out-of-state agency, Laforet and Batelli conspired in failing to enforce municipal policies, customs, practices and procedures of the Township, failing to report the incident to a national accreditation agency, hiding the incident from local media and failing to take disciplinary action against the police officer.

19.     In or about the month of November 2014, Sinclair in his capacity as the Superintendent of the DPW, was operating a DPW computer for the purpose of ordering DPW materials and/or supplies.   In the course of such computer use, Sinclair experienced a malicious browser helper object and spyware (the "MBHOS") which popped up pornographic material on the DPW computer screen.  Sinclair reported the MBHOS to the Mahwah IT Department and requested that firewall and spyware protections for any future MBHOS be implemented on all DPW computers.

20.     Following Sinclair's report, the defendant Township of Mahwah failed to install firewall and spyware protections in DPW computers contrary to the prior practice, policy and procedure of installing such firewall and spyware protections in other computer and computer systems of the Township of Mahwah.

21.     Upon information and belief, the Retaliatory Actions were undertaken for the purpose of forcing Sinclair to resign, retire and/or be removed as an employee of the DPW and to prevent Sinclair from any future campaigns for the office of mayor of the defendant Township.

22.     Upon information and belief, on or prior to February 25, 2015, the defendant Laforet and the defendant Batelli, either jointly or severally, or in concert with others unknown to the plaintiffs at the present time, denominated in this action as John Doe 1 and/or John Doe 2, orchestrated, encouraged and/or participated in the creation, preparation or transmittal of and/or caused to be sent to the Bergen County Prosecutor's Office ("Prosecutor's Office") an undated,

entirely typewritten, anonymous letter claiming that Edward Sinclair had engaged in the viewing of child pornography and pornography on DPW computers during and after work hours (the "Anonymous Letter").

23.     Upon information and belief, copies of the Anonymous Letter were circulated, sent or delivered to defendant Laforet, Detective's Bureau of the Township of Mahwah, and Mahwah Police Department Chief, defendant Batelli, in furtherance of their conspiracy and in an attempt to disguise their respective participation in the conspiratorial plan and actions.

24.     As a direct result of the Anonymous Letter, and other communications from defendant Laforet and defendant Batelli, on or about February 25, 2015, the Bergen County Prosecutor's Office confiscated and removed three computers located in the DPW to investigate the allegations of criminal wrongdoing contained in the Anonymous Letter including but not limited to Sinclair's viewing of child pornography.

25.     Upon information and belief, on or about February 27, 2015, the Bergen County Prosecutor's Office finalized its forensic investigation of the DPW computers and concluded that there was no evidence of criminal wrongdoing of any kind or nature.

26.     Upon information and belief, on or about February 27, 2015 the Bergen County Prosecutor's Office determined that no child pornography or other pornography was found on any of the DPW computers except for one computer which was unrelated to Edward Sinclair.

27.     Upon information and belief, on or about February 27, 2015 the Prosecutor's Office reported the result of its investigation to defendant Laforet, defendant Batelli, the Township and others (the "Prosecutor's Report").

28.     From in or about and continuing after February 27, 2015, Laforet and Batelli, contrary to the prior policies, customs, practices and procedures of the Township, and despite the

8

report of the Bergen County Prosecutor's Office, conspired together and continued to investigate the allegations of child pornography and inappropriate viewing of DPW computers, which was known or should have been known by the defendant Township.

29.    On or about March 2, 2015, the Bergen County Prosecutor's Office returned all of the investigated computers to the Mahwah Police Department.

30.    On March 9, 2015, the Mayor personally went to Sinclair's office at the DPW and handed him a notice entitled "Notice of Removal and Termination of Employment N.J.S.A. 40:69A-43(c)" addressed to "Edward Sinclair, Director of Public Works" (the "Suspension Letter") stating in pertinent part:

> "This is to advise that I am removing you as Director of Public Works and terminating your employment.  The removal and termination shall take effect twenty (20) days after the date of this notice, March 29, 2015.
>
> This Notice of Removal and Termination of Employment is being submitted to you in accordance with N.J.S.A. 40:69A-43(c).  The basis for the removal as the Director of Public Works and termination of employment is the unauthorized use of a Township computer to view inappropriate images.
> *
> *
> *
> *
>
> TOWNSHIP OF MAHWAH
> by William Laforet, Mayor."

31.    The defendant Laforet's suspension of Sinclair on March 9, 2015 on the basis of the unauthorized use of Township computers to view inappropriate images was action taken at a time when defendant Laforet, defendant Batelli and defendant Township knew or should have known that there was no basis for such claims.

32.     The defendant Laforet's suspension of Sinclair on March 9, 2015 was made in furtherance of a conspiracy with defendant Batelli, and with the intent to embarrass, humiliate, emotionally distress and defame Sinclair with malicious motives and evil disregard of the Prosecutors Report and the prior policies, customs, practices and procedures of the Township.

33.     Upon information and belief, no new information or investigation was received by the Mahwah Police Department, defendant Laforet or defendant Batelli from the time that the Prosecutor's Office returned the computers to the time that the defendant Laforet removed Sinclair as Director of the DPW.

34.     Upon information and belief, defendant Laforet, defendant Batelli and the Mahwah Police Department, continued to investigate Sinclair regarding the Anonymous Letter and claims concerning criminal wrongdoing of Sinclair, which was known or should have been known by the defendant Township.

35.     In furtherance of his Retaliatory Actions and following the Suspension Letter, upon information and belief the defendant Laforet and the defendant Batelli ordered Mahwah Police Officer Rosario Zito ("Officer Zito") to devote substantially all of his time to continue to investigate Sinclair for the very same criminal allegations of viewing of pornography and child pornography, even though such criminal allegations had already been discredited by the Prosecutor's Report.

36.     Upon information and belief, the defendants knew or should have known that there was no basis to terminate Sinclair's employment.  On March 19, 2015 in a closed session meeting of the defendant Township, Officer Zito reported to the defendant Laforet and defendant Township's governing body on the basis of his independent investigation of the DPW computers on behalf of the Mahwah Police Department concluding that there was no factual basis to

support the criminal allegations of Sinclair's viewing of pornography and child pornography (the "Officer Zito Report").

37.     On or about March 19, 2015, the Township Council voted unanimously to reinstate Sinclair to his position as Director of the DPW in accordance with N.J.S.A. § 40:69A-1, et seq. (the "Faulkner Act").

38.     Notwithstanding Township's reinstating Sinclair, the Prosecutor's Report and Officer Zito Report finding no criminal wrongdoing of any nature and no child pornography located on any of the computers, the defendant Laforet acting in concert with the defendant Batelli and with the full knowledge of the defendant Township kept open an investigation against Sinclair concerning the allegations contained in the Anonymous Letter.

39.     The aforesaid defendants wrongful and Retaliatory Actions, conduct and investigations continued for months after the vote to reinstate Sinclair and well after Sinclair returned to work as Director of the DPW.

40.     On March 19, 2015 following the vote of the defendant Township to reinstate Sinclair, the defendant, Laforet, subsequent to hearing and receiving the report of the Mahwah Police Department in closed session of the governing body of the Township, that there is no proof linking Sinclair to any viewing of pornography or other inappropriate material, the defendant individually and in his capacity as the Mayor of the Township issued a written statement and press release to the media, wherein defendant Laforet insinuated, inferred and strongly suggested that Sinclair viewed inappropriate and pornographic material, which written statement was made by Laforet with the intent to maliciously subvert the action of the Township and thereby continue defendant Laforet's wrongful pattern of defamatory statements against

Sinclair, without any factual basis or justification, and to further cause and bring about his resignation, as follows:

> "I stand by my decision to terminate Ed Sinclair. While this is a personnel matter, there is evidence that inappropriate material was being viewed over a prolonged period of time in the DPW. This occurred on a township computer and on township time. The decision of this council to reinstate Ed Sinclair is a slap in the face to the taxpayers of Mahwah. It is an incredibly poor message to send to the other employees of this township; employees that are dedicated, take their jobs and responsibilities seriously, and contribute to improving Mahwah every day with the hard work that they put in…We hire great people in this town that work hard every day. The actions of a single employee that decided to neglect his responsibilities should not detract from, nor impact that reputation. I firmly stand by my decision to terminate Ed Sinclair."

This written statement was subsequently published in a number of newspapers including but not limited to articles featured in i) The Record on March 20, 2015, and republished on online, ii) in the Mahwah Patch on March 24, 2015, and republished online, and iii) in The Star-Ledger on March 26, 2015 and also republished online.

41.     On and after March 19, 2015, in an attempt to intimidate Sinclair and force him to resign as the Director of the Mahwah DPW and to retire, the defendant Laforet, individually and in his capacity as the Mayor of the defendant Township, and defendant Batelli, individually and in his capacity as the chief of police of the defendant Township, collectively and as co-conspirators, engaged in a number of wrongful actions, including without limitation, continuing the investigation and accusations of pornography against Sinclair, all with the specific intent and purpose to delay, subvert and circumvent the March 19, 2015 actions of the Township and a release of all claims between Sinclair and the Township and to intentionally, maliciously and without justification or excuse, defame Sinclair.

42.     On or about March 20, 2015 in an attempt to intimidate Sinclair and force him to resign as the Director of the Mahwah DPW and to retire, the defendant Laforet, individually and in his capacity as the Mayor of the defendant Township engaged in a number of wrongful actions to delay, subvert and circumvent the March 19, 2015 actions of the Township and a release of all claims between Sinclair and the Township and to intentionally, maliciously and without justification or excuse, defame Sinclair.  These actions included, without limitation, a meeting with Councilwomen Lisa DiGiulio of the governing body of defendant Township, during which defendant Laforet called Sinclair a "pervert" and that Laforet would "never give that f…ing pedophile back his job."

43.     On or about March 24, 2015 the defendant Laforet, individually and in his capacity as the Mayor of the defendant Township, in a widely circulated defamatory comment published in the article "Mahwah mayor stands by DPW decision in wake of explosive council meeting" on the website http://politickernj.com/, reiterated his position that Sinclair was fired over pornography found on DPW computers of the defendant Township, and despite any lack of proof from the defendant Batelli and the police department of Mahwah, willfully, maliciously and without justification and claiming a conflict of interest arising from prior political campaigns involving Sinclair and members of the governing body of the defendant Mahwah, refused to accept the decision of the governing body reversing his suspension of Sinclair, as follows:

> "…Laforet's decision to fire Mahwah D.P.W. Director Ed Sinclair because of alleged inappropriate material found on a D.P.W. computer. ***"Based on facts that were clear and evident to me, that was the basis of my decision."*** Laforet and Sinclair have opposed each other before. Laforet, an independent, defeated Sinclair, a Republican, in the non-partisan 2012 Mahwah mayoral election. Yet Laforet named Sinclair to be the township's D.P.W. director in 2014.  Laforet explained how the road to making his decision to try to terminate Sinclair began.  ***"We received an anonymous letter that indicated that there was pornography on a***

*township computer in [the D.P.W.'s] office,"* Laforet said, adding that the *Bergen County Prosecutor's Office examined the computer specifically for child pornography, which is illegal*…*"It was determined that pornography was viewed on the D.P.W. computer on the township's time and on the township's dime,"* Laforet said. *"That's what led me to my conclusion that [Sinclair] be terminated."*

44.    On or about March 26, 2015 at approximately 2:32 p.m. in an attempt to further intimidate, defame, harm and cause embarrassment and humiliation to Sinclair, the defendant Laforet, individually and in his capacity as the Mayor of the defendant Township, posted, published and widely circulated links on Facebook and other social media to his "Team Laforet" regarding pornography at workplaces as follows:

> (a) An article from The Washington Examiner entitled "Not the Onion: The 'No watching porn at work' bill passes committee" (http://www.washingtonexaminer.com/not-the-onion-bill-prohibiting-federal-workers-from-watching-porn-at-work-passes-house-committee/article/2562035),

> and

> (b) Press Release from Congressman Mark Meadows entitled "Bill Barring Pornography from Federal Agencies Advances through Committee."(https://meadows.house.gov/media-center/press-releases/bill-barring-pornography-from-federal-agencies-advances-through).

The aforesaid links were circulated by defendant Laforet individually and in his capacity as the Mayor of the Township of Mahwah, willfully, widely and maliciously for the purpose of defaming, humiliating and embarrassing Sinclair in order to cause Sinclair to resign, retire or to otherwise prevent Sinclair from resuming his duties as the Director of the DPW of the defendant Township.

45.    On or about March 27, 2015, the defendant Laforet, individually and in his capacity as the Mayor of the defendant Township, in a widely circulated defamatory comment on

WCBS-TV, channel 2, the flagship station of the CBS Television Network, located in New York City, subsequently republished in written transcript and online video, reiterated his position that Sinclair was fired over pornography found on DPW computers of the defendant Township and refused to accept the decision of the governing body reversing his suspension of Sinclair, as follows:

> **WCBS – Channel 2 – TV (Aired March 27, 2015 during 6:00 p.m. and 11:00 p.m. news broadcasts as well as republished online for more than a year which contained a photograph of Sinclair while voiceover stating that he was fired over pornography)**
>
> MAHWAH, N.J. (CBSNewYork) — There were fireworks last week at a town council meeting in New Jersey over the firing of a longtime town employee. He was eventually reinstated, after an angry obscenity-filled rant from one of the council members, CBS2's Sonia Rincon reported Friday…***Sinclair was fired over pornography found on a Department of Public Works computer*** (emphasis added)…***Mayor Laforet said he is standing by his decision, saying it was the right thing to do*** (emphasis added)…"

At the time of such comments, the defendant Laforet, individually and in his capacity as the Mayor of defendant Township, knew that the Mahwah Police Department found no evidence that Sinclair viewed pornographic material on any DPW computer.  Despite such knowledge, the defendant Laforet nevertheless willfully, maliciously and without justification continued his accusations of Sinclair's pornographic viewing and unreasonably and arbitrarily refused to accept the decision of the governing body reversing his suspension of Sinclair.

46.     On or about March 31, 2015, and April 1, 2015, the defendant Laforet, individually and in his capacity as the Mayor of the defendant Township, in a widely circulated defamatory comment on WPIX, channel 11, a major media network located in the New York-New Jersey Metropolitan Area, subsequently republished in written transcript and online video, reiterated his position that Sinclair was fired over pornography found on DPW computers of the

15

defendant Township, and despite any lack of proof from the defendant Batelli and the police department of Mahwah, willfully, maliciously and without justification and claiming a conflict of interest arising from prior political campaigns involving Sinclair and members of the governing body of the defendant Mahwah, refused to accept the decision of the governing body reversing his suspension of Sinclair, as follows:

### WPIX – Channel 11 – TV

…the firing and reinstatement of the town's director of public works, Ed Sinclair, who was accused of looking up porn on town computers. The allegations against Sinclair were made in a letter from an anonymous Bergen County resident. ***The letter has been obtained exclusively by PIX 11 News.*** It's addressed to a Lieutenant with Bergen County Prosecutor's Office, and reads in part "It has come to my attention that the Director of Public Works for the Township of Mahwah, Edward Sinclair, has been staying after hours to take part in online pornography viewing on the Township-owned and operated computers…" …the evidence that was found did convince Mayor Bill LaForet that Sinclair had acted improperly and he fired him…LaForet and Sinclair are political adversaries. They ran against each other in 2012 for the office of Mayor. LaForet says he won with more than 60 percent of the vote. He said today he still stands by his decision to fire Sinclair. "Not long ago, did I appoint him to the vacant director's, who retired, his position," said LaForet, "Ed did great job. But that doesn't excuse you from the inappropriate material. And the fact is that no one can answer me. So who did it?"

Upon information and belief, Laforet, individually and in his capacity as the Mayor of the defendant Township, leaked the Anonymous Letter to WPIX Channel 11 reporter Christie Duffy which was televised in readable format to millions of viewers, and republished online to millions more, knowingly and intending to circulate defamatory allegations proven to be false, and which Laforet knew to be false, including but not limited to the allegation that Sinclair viewed pornography and/or child pornography on township computers.

47.     On or about April 1, 2015 the defendant Laforet, individually and in his capacity as the Mayor of the defendant Township, in a widely circulated, reported and replayed Radio interview with reporter Levon Putney on Greater New York-New Jersey Metropolitan Area Radio station WCBS (880 AM) continued his willful, malicious and unfounded campaign against Sinclair alleging that Sinclair was fired because he was viewing pornography stating that "I fired [Sinclair] because he was viewing pornography."   WCBS (880AM) has more than 3,010,000 total listeners in the Greater New York-New Jersey Metropolitan Area.

48.     On or about April 1, 2015 the defendant Laforet, individually and in his capacity as the Mayor of the defendant Township, in a widely circulated, reported and replayed Radio interview with reporter Levon Putney on New York Metropolitan-Area Radio station WCBS (880 AM) continued his willful, malicious and unfounded political campaign and malicious defamation against Sinclair by further stating that defendant Laforet was "tipped off" by the Anonymous Letter to the Bergen County Prosecutor's Office that Sinclair was "viewing pornography on Township computers. In corporate America, you wouldn't have one day to resolve this issue. The fact that he's been reinstated sends a very terrible message."

49.     Upon information and belief, defendant Laforet and defendant Batelli, individually and in their capacities as the Mayor and chief of police, respectively, of the defendant Township, were involved in the preparation, dissemination and/or circulation of the Anonymous Letter.

50.     The defendant Township of Mahwah is responsible for all policies, customs, practices and procedures implemented through its various agencies, departments and employees, and for injury occasioned thereby.

51.     All actions and/or inactions of defendant Laforet while acting as the mayor of the defendant Township were taken, exercised and performed under color of state law.

52.     The defendant Township employed the defendant James Batelli as the police chief of the Township.

53.     The defendant Batelli was involved in, directed and continued the investigations of Sinclair at all relevant times herein while acting in the course and scope of his employment and under color of state law.

54.     Each and every act stated herein by the defendant Batelli individually and in his capacity as the police chief of Mahwah, are alleged to have been done by him under color of state law and pretense of statutes, ordinances, regulations, customs and usages of the State of New Jersey, Township of Mahwah, County of Bergen, and under the authority of his office as the police chief of the defendant Township.

55.     The defendant Laforet acted to suspend Sinclair as the Director of Public Works on the basis of claims of pornographic activities and was involved in, directed and continued the investigation of Sinclair at all relevant times herein while acting individually and in his capacity as the Mayor of the Township and under color of state law.

56.     As a direct and proximate cause of the aforesaid willful, deliberate and malicious actions of the defendants, Sinclair up to the time of his death and the plaintiffs have suffered and the plaintiffs will in the future suffer grievous pain, emotional distress, physical manifestations of emotional distress, mental anguish, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation and other losses.

## CAUSES OF ACTION

### FIRST COUNT
### (Defamation)

57.     Plaintiffs repeat and reincorporate by reference herein as though recited herein at length all of the allegations of the preceding paragraphs.

58.     Defendant Laforet, individually and in his capacity as the Mayor of the defendant Township, made the aforesaid defamatory statements regarding Sinclair, which defamatory statements were made willfully, with malice and wrongful intent.

59.     The aforesaid defamatory statements were false.

60.     The aforesaid defamatory statements were communicated to people other than Sinclair and Plaintiffs and widely circulated in the local, state and national media, social media, print, online, television, radio and news reporting services.

61.     As a direct and proximate cause of the actions of the defendants, Sinclair up to the time of his death and the Plaintiffs have suffered and the Plaintiffs will in the future suffer grievous pain, emotional distress, physical manifestations of emotional distress, mental anguish, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation and other losses.

62.     The actions of the defendants aforesaid constitute defamation.

### SECOND COUNT
### (Defamation Per Se)

63.     Plaintiffs repeat and reincorporate by reference herein as though recited herein at length all of the allegations of the preceding paragraphs.

64.     Defendant Laforet, individually and in his capacity as the Mayor of the defendant Township, made the aforesaid defamatory statements regarding Sinclair, which defamatory statements were made willfully, with malice and wrongful intent.

65.     The aforesaid defamatory statements were false.

66.     The defamatory statements were communicated to people other than Sinclair and Plaintiffs and widely circulated in the local, state and national media, social media, print, online, television, radio and news reporting services.

67.     As a direct and proximate cause of the actions of the defendants, Sinclair up to the time of his death and Plaintiffs have suffered and the Plaintiffs will in the future suffer grievous pain, emotional distress, physical manifestations of emotional distress, mental anguish, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation and other losses.

68.     The actions of the defendants aforesaid constitute defamation per se.

**THIRD COUNT**
**Violation of Civil Rights Pursuant to 42 U.S.C. §1983**
**(Political Retaliation)**

69.     Plaintiffs repeat and reincorporate by reference herein as though recited herein at length all of the allegations of the preceding paragraphs.

70.     At all times relevant herein, Sinclair engaged in activity protected under the First Amendment of the United States Constitution, including but not limited to the right of free speech and political expression involving political campaigns and issues in the Township of Mahwah.

71.     Defendant Laforet, individually and in his capacity as the Mayor of the defendant Township, and the defendant Batelli, individually and in his capacity as the Police Chief of

Mahwah, engaged in a course of conduct including but not limited to false accusations of viewing child pornography and pornography, suspension of Sinclair as Director of the DPW, dissemination of the Anonymous Letter to nationwide media and television, continuing the criminal investigations of Sinclair and the DPW computers and other acts, all made in retaliation for Sinclair's political aspirations to become the Mayor of the defendant Township, in retaliation for Sinclair's failure to support the political career of the defendant Laforet and in an attempt to chill and prevent Sinclair's criticism of the actions and policies of the defendant Laforet as the mayor of the Township of Mahwah.

72.     The aforesaid actions were made by the defendants to humiliate and embarrass Sinclair, drive him to resign or retire as the Director of the DPW, break his health, seriously injure his reputation, financial security and community standing, as well as other actions in punishment for Sinclair's political aspirations to become the mayor of the Township of Mahwah.

73.     On the basis of the information known to the defendants, the defendants knew or should have known that the aforesaid Retaliatory Actions including the aforesaid defamatory release of the Anonymous Letter to nationwide media and television, of the defendants were unreasonable and constituted retaliation in violation of the First Amendment of the United States Constitution.

74.     As a direct and proximate cause of the actions of the defendants, Sinclair up to the time of his death and the Plaintiffs have suffered and the Plaintiffs will in the future suffer grievous pain, emotional distress, physical manifestations of emotional distress, mental anguish, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation and other losses.

**FOURTH COUNT**
**Violation of Civil Rights Pursuant to 42 U.S.C. §1983**
**(Failure to Implement Appropriate Policies, Customs, Practices and Procedures)**

75.    Plaintiffs repeat and reincorporate by reference herein as though recited herein at length all of the allegations of the preceding paragraphs.

76.    The defendant Township and the defendant Laforet owed a duty to Sinclair and other similarly situated employees of the Township of Mahwah to provide a safe working environment free from intrusion of MBHOS, child and other pornographic materials and solicitations.

77.    The defendant Township and the defendant Laforet failed, refused and neglected to implement, enforce, administer or police policies, customs, practices and procedures uniformly in the Township of Mahwah requiring the installation of firewalls and other security systems to prevent MBHOS to infect any of the computers and computer systems used in the Township of Mahwah, including but not limited to the DPW computers.

78.    The Township of Mahwah and the defendant Laforet failed, refused and neglected to install firewalls and other security systems to prevent MBHOS to infect computers and computer systems used in the DPW despite (i) the installation of such firewalls and security systems in other departments of the defendant Township, and (ii) Sinclair's November 2014 report of an incident of spyware MBHOS and pornographic material on a DPW computer and request for assistance.

79.    As a result thereof, Sinclair was unnecessarily, arbitrarily, unfairly and unreasonably subjected to accusations, numerous and continuing investigations, defamatory statements and suspension as the Director of the DPW.

80.    As a direct and proximate cause of the failure to implement, enforce, administer and police such appropriate policies, customs, practices and procedures of the defendants, Sinclair up to the time of his death and the Plaintiffs have suffered and the Plaintiffs will in the future suffer grievous pain, emotional distress, physical manifestations of emotional distress, mental anguish, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation and other losses.

**FIFTH COUNT**
**Violation of Civil Rights Pursuant to 42 U.S.C. §1983**
**(Abuse of Process)**

81.    Plaintiffs repeat and reincorporate by reference herein as though recited herein at length all of the allegations of the preceding paragraphs.

82.    Defendants instituted civil, criminal and other investigations against Sinclair without probable cause and with malice and for the purpose of wrongdoing in violation of 42 U.S.C. § 1983 and the 1st, 4th and 14th Amendments of the Unites States Constitution.

83.    Defendants knew or should have known that the investigations and charges against Sinclair were unwarranted, arbitrary, unreasonable and capricious and that there was no reasonable basis to continue such investigations against Sinclair.

84.    Defendants knowingly failed to discontinue civil, criminal and other investigations even after receiving the Prosecutor's Report and the Officer Zito Report.

85.    Defendant Township failed, neglected and refused to supervise its high ranking officials and employees, including, without limitation, the defendant Laforet and defendant Batelli and further failed and neglected to adopt, implement, require, enforce, administer and police policies, customs, practices and procedures of the Township and/or customs preventing unwarranted investigations to be instituted and/or continued against Mahwah employees with the

intention of using said charges as leverage to force employees to resign or retire and for political retaliation, as set forth above.

86.     As a direct and proximate result of the actions of the defendants, Sinclair up to the time of his death and Plaintiffs have suffered and the Plaintiffs will in the future suffer grievous pain, emotional distress, physical manifestations of emotional distress, mental anguish, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation and other losses.

87.     The actions of the defendants aforesaid constitute abuse of process and a violation of 42 U.S.C. § 1983 and the 1st, 4th and 14th Amendments of the United States Constitution.

## SIXTH COUNT
### (Intentional Infliction of Emotional Distress)

88.     Plaintiffs repeat and reincorporate by reference herein as though recited herein at length all of the allegations of the preceding paragraphs.

89.     At all times herein, defendants acted intentionally, maliciously and unreasonably in publishing, circulating, disseminating and distributing the pornography allegations when they knew or should have known that emotional distress would likely result.

90.     Notwithstanding Sinclair's repeated requests, the actions of the defendant Township in reinstating Sinclair following his suspension by defendant Laforet and the Officer Zito Report of the Mahwah Police Department exonerating Sinclair from defendant Laforet's pornography allegations, defendant Laforet and defendant Batelli, individually and in their official capacities, failed, refused and neglected to cease and desist from (i) further publishing, circulating, disseminating and distributing the pornography allegations, and (ii) continuing to investigate Sinclair for such pornography allegations.

91.     As such, in doing the acts alleged hereinabove, defendants acted outrageously, with malice and evil intent, and beyond all reasonable bounds of decency, and intentionally inflicted severe emotional distress upon Sinclair and the Plaintiffs, to their detriment.

92.     Defendants' conduct was intentional and malicious and done for the purpose of causing, or was known by the defendants to likely cause, Sinclair's and the Plaintiffs' mental anguish and severe emotional distress, anxiety and worry.

93.     As a proximate cause of the aforesaid wrongful conduct, Sinclair up to the time of his death and the Plaintiffs have and continue to suffer severe emotional distress, anxiety and worry.

94.     Plaintiffs are informed, believe and allege that defendants acted with actual malice and reckless disregard of Sinclair's and Plaintiffs' rights.

95.     As a direct and proximate result of the aforementioned acts by defendants, Sinclair up to the time of his death and Plaintiffs have suffered injury, damage, loss, harm, anxiety, embarrassment, humiliation, shame and severe emotional distress and damages arising therefrom.

### SEVENTH COUNT
### Violation of Civil Rights Pursuant to 42 U.S.C. §1983
### (Negligent Supervision)

96.     Plaintiffs repeat and reincorporate by reference herein as though recited herein at length all of the allegations of the preceding paragraphs.

97.     The defendant Township and the defendant Laforet owed a duty to Sinclair and other similarly situated employees of the Township of Mahwah to provide fair and equal treatment to its employees, equal protection and due process of law and non-discriminatory actions in the workplace of the Township of Mahwah.

98.     At all times relevant herein, the defendant Township knew or should have known that defendant Batelli and the Mahwah Police Department, directly and through the Bergen County Prosecutor, instituted criminal and other investigations against Sinclair without probable cause and with malice and for the purpose of wrongdoing in violation of 42 U.S.C. § 1983 and the 1st, 4th and 14th Amendments of the Unites States Constitution.

99.     Defendant Township knew that the investigations and charges against Sinclair were unwarranted, arbitrary, unreasonable and capricious, and that there was no reasonable basis to continue such investigations against Sinclair.

100.    Defendant Township negligently failed to direct, supervise and/or compel defendant Laforet, defendant Batelli and the Mahwah Police Department to discontinue such civil and criminal investigations upon receiving the Prosecutor's Report and the Officer Zito Report and such actions were in violation of the prior policies, customs, practices and procedures of the Township and its departments, including the Police Department of Mahwah.

101.    As a direct and proximate result of the actions of the defendants, Sinclair up to the time of his death and Plaintiffs have suffered and the Plaintiffs will in the future suffer grievous pain, emotional distress, physical manifestations of emotional distress, mental anguish, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation and other losses.

102.    The actions of the defendants aforesaid constitute negligent supervision by the defendant Township and a violation 42 U.S.C. § 1983 and the 1st, 4th and 14th Amendments of the Unites States Constitution.

## EIGHTH COUNT
### (Tortious Interference)

103.    Plaintiffs repeat and reincorporate by reference herein as though recited herein at length all of the allegations of the preceding paragraphs.

104.    At all times relevant herein, Sinclair was an employee of the Township of Mahwah working in various positions at the DPW.  Sinclair was a long time and successful employee of the Mahwah DPW.

105.    Sinclair had an economic expectancy of continued employment until retirement.

106.    The defendant Laforet and the defendant Batelli knew or should have known of Sinclair's economic expectancy of continued employment.

107.    In accordance with the aforesaid actions, the defendant Laforet and the defendant Batelli intended to interfere with Sinclair's continued employment with the Township of Mahwah.

108.    As a result of the aforesaid actions, the defendant Laforet and the defendant Batelli actually interfered with Sinclair's continued employment with the Township of Mahwah.

109.    The aforesaid actions against Sinclair were improper.

110.    As a direct and proximate result of the actions of the defendants, Sinclair up to the time of his death and Plaintiffs have suffered and the Plaintiffs will in the future suffer grievous pain, emotional distress, physical manifestations of emotional distress, mental anguish, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation and other losses.

111.    The actions of the defendant Laforet and defendant Batelli aforesaid constitute tortious interference by the defendants.

## NINTH COUNT
### (Conspiracy)

112.    Plaintiffs repeat and reincorporate by reference herein as though recited herein at length all of the allegations of the preceding paragraphs.

113.    Defendant Laforet, individually and in his capacity as the Mayor of the defendant Township, defendant Batelli, individually and in his capacity as the Police Chief of the defendant Township, defendant John Doe 1 and defendant John Doe 2, acting together and with each other, in or about February 2015, conspired, orchestrated, encouraged and/or participated in the creation, preparation and/or transmittal of and/or caused to be sent to the Bergen County Prosecutor's Office an undated, entirely typewritten, Anonymous Letter claiming that Edward Sinclair had engaged in the viewing of child pornography and pornography on DPW computers during and after work hours, and otherwise, made, published widely distributed defamatory statements regarding Sinclair, which defamatory statements were made willfully, with malice and wrongful intent.

114.    The aforesaid defamatory statements were made in furtherance of the conspiracy.

115.    At all times relevant herein, the defendants knew that the defamatory statements were false.

116.    In furtherance of the aforesaid conspiracy, the defamatory statements were made and intended to be communicated to people other than Sinclair and Plaintiffs and were widely circulated in the local, state and national media, social media, print, online, national television, radio and news reporting services for the purpose of forcing Sinclair to resign, retire, brake his health or purposes contrary to law.

117.    As a direct and proximate cause of the actions of the defendants, Sinclair up to the time of his death and the Plaintiffs have suffered and Plaintiffs will in the future suffer grievous

pain, emotional distress, physical manifestations of emotional distress, mental anguish, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation and other losses.

### TENTH COUNT
### Violation of Civil Rights Pursuant to 42 U.S.C. §1983
### (Violation of Constitutional Rights)

118.    Plaintiffs repeat and reincorporate by reference herein as though recited herein at length all of the allegations of the preceding paragraphs.

119.    The aforesaid actions are in violation of the 1st, 4th and 14th Amendments of the United States Constitution.

120.    As a direct and proximate cause of the actions of the defendants, Sinclair up to the time of his death and the Plaintiffs have suffered and Plaintiffs will in the future suffer grievous pain, emotional distress, physical manifestations of emotional distress, mental anguish, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation and other losses.

### ELEVENTH COUNT
### (Respondeat Superior)

121.    Plaintiffs repeat and reincorporate by reference herein as though recited herein at length all of the allegations of the preceding paragraphs.

122.    Defendant Batelli was at all times acting within the scope of his employment, as an employee of the Township of Mahwah and the Mahwah Police Department and under color of state law.

123.    While acting within the scope of his employment as the Chief of Police of Mahwah, defendant Batelli, individually and in his official capacity, undertook the aforesaid actions, at the direction of the defendant Laforet.

124.   The defendant Batelli undertook the aforesaid actions as part of a conspiracy with defendant Laforet for political retaliation and defamation against Sinclair, and in furtherance of an effort to force Sinclair to resign, retire or break his health.

125.   The actions of defendant Batelli and defendant Laforet against Sinclair were willful, malicious, unconscionable and without justification or excuse.

126.   As a direct and proximate cause of the actions of the defendants, Sinclair up to the time of his death and the plaintiffs have suffered and plaintiffs will in the future suffer grievous pain, emotional distress, physical manifestations of emotional distress, mental anguish, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation and other losses.

127.   Under Respondeat Superior, the defendant Township of Mahwah is liable for the acts of, and injury caused by defendant Batelli and defendant Laforet to Sinclair and the plaintiffs.

**TWELFTH COUNT**
**(Wrongful Death)**

128.   Plaintiffs repeat and reincorporate by reference herein as though recited herein at length all of the allegations of the preceding paragraphs.

129.   As a result of the defendant's actions aforesaid, the decedent Sinclair suffered severe depression, became despondent and sedentary. After prolonged suffering and agony the decedent Sinclair died on August 13, 2015.

130.   The decedent Sinclair died as a result of the defendant's actions aforesaid.

131.   This Twelfth Cause of Action has been commenced within two (2) years from the date of death of the decedent.

132.    This action is being instituted and maintained pursuant to the provisions of the

Wrongful Death Act in the State of New Jersey.

### THIRTEENTH COUNT
### (Breach of Contract)

133.    Plaintiffs repeat and reincorporate by reference herein as though recited herein at

length all of the allegations of the preceding paragraphs.

134.    On or about March 26, 2015, Sinclair executed and delivered a general release to

the Township of Mahwah, including all officers, agents and employees, including the Mayor,

officially and personally, which provided in part as follows:

> "…I release and give up any and all claims and rights that I may have
> against You except as set forth in this Release.  This releases all claims,
> costs and damages, including those of which I am not aware and those
> that are not mentioned in this Release up to and through March 19,
> 2015 at the time of the Township Council's vote. This Release applies
> to anything that has happened up to and including March 19, 2015 at
> the time of the Township Council's vote. I specifically release any and
> all rights and claims that were or could have been raised against You,
> the Township of Mahwah, as well as all officers, agents and employees
> of the Township of Mahwah, including the Mayor, in his official and
> personal capacity, arising from or in any manner related to the actions
> of the Mayor of the Township of Mahwah terminating my employment
> as the Director of the Department of Public Works of the Township of
> Mahwah, Bergen County, New Jersey (the "Mahwah Actions"), up to
> and including March 19, 2015, at the time of the Township Council's
> Vote."

135.    On or about March 27, 2017, the Township of Mahwah executed and delivered a

general release to Sinclair, which provided in part as follows:

> "…We, the Township of Mahwah including all officers, agents and
> employees, including the Mayor, in his official and personal capacity,
> release and give up any and all claims and rights that We may have
> against You except as set forth in this Release.  This releases all claims,
> costs and damages, including those of which We are not aware and
> those that are not mentioned in this Release up to and through March
> 19, 2015 at the time of the Township Council's vote. This Release
> applies to anything that has happened up to and including March 19,

2015 at the time of the Township Council's vote.  We specifically release any and all rights, actions and claims that were or could have been raised against You arising from or in any manner related to claims that You viewed or permitted others to view inappropriate images and/or pornography, web sites or related material on computers of the Department of Public Works of the Township of Mahwah up to and including March 19, 2015 (the "Mahwah Actions") at the time of the Township Council's vote."

136.    The aforesaid exchange of general releases comprised an agreement of settlement between Sinclair and the Township of Mahwah, including the Mayor, in his official and personal capacity, as of March 19, 2015, of all claims related to the allegations that Sinclair viewed or permitted others to view inappropriate images and/or pornography, web sites or related materials on computers of the Township of Mahwah (the "Settlement Agreement").

137.    Consideration for and a material condition of the Settlement Agreement was that the Township of Mahwah agreed to the reinstatement of Sinclair as the Director of the Department of Public Works of the Township of Mahwah.

138.    Consideration for and a material condition of the Settlement Agreement was that the Township of Mahwah agreed to issue a press release or official statement to publicly exonerate Sinclair of the allegations that he viewed or permitted others to view inappropriate images and/or pornography, web sites or related materials on computers of the Township of Mahwah.

139.    On or after March 19, 2015 The Township of Mahwah failed, refused and/or neglected to issue a press release or official statement to exonerate Sinclair of the allegations that he viewed or permitted others to view inappropriate images and/or pornography, web sites or related materials on computers of the Township of Mahwah, contrary to the terms of the Settlement Agreement.

140.    On and after March 19, 2015, the Township of Mahwah, by and thorough its Mayor, the defendant Laforet, and otherwise, continued to claim that Sinclair viewed or permitted others to view inappropriate images and/or pornography, web sites or related materials on computers of the Township of Mahwah, contrary to the terms of the Settlement Agreement.

141.    On and after March 19, 2015, the Township of Mahwah, by and thorough its Police Chief, defendant Batelli, and otherwise, continued to investigate Sinclair regarding claims that Sinclair viewed or permitted others to view inappropriate images and/or pornography, web sites or related materials on computers of the Township of Mahwah, contrary to the terms of the Settlement Agreement.

142.    On and after March 19, 2015, the Township of Mahwah, failed, refused and/or neglected to supervise, control, overrule, prevent or otherwise stop the Mayor of the Township, defendant Laforet, and/or the Police Chief, defendant Batelli, from continued press releases, announcements, interviews, statements, and other actions and investigations with respect to the claim that Sinclair viewed or permitted others to view inappropriate images and/or pornography, web sites or related materials on computers of the Township of Mahwah, contrary to terms of the Settlement Agreement.

143.    As a direct and proximate cause of the actions of the defendants, Sinclair up to the time of his death and the plaintiffs have suffered and plaintiffs will in the future suffer grievous pain, emotional distress, physical manifestations of emotional distress, mental anguish, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation and other losses.

144.    The actions of the defendant Township of Mahwah constitutes a breach of contract.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment:

a.      Adjudging that defendants' acts complained of herein have violated and continue to violate the rights of Plaintiffs and the rights of Sinclair up to the time of his death;

b.      On the **FIRST COUNT** through the **ELEVENTH COUNT** and the **THIRTEENTH COUNT** of the Complaint**,** awarding damages to the Plaintiffs in accordance with the Survival Act of the State of New Jersey, N.J.S.A. 2A:15-3, as follows:

       (i)      compensatory damages including but not limited to damages for the grievous pain, emotional distress, physical manifestations of emotional distress, mental anguish, shame, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation and other damages suffered by the plaintiffs;

       (ii)      reasonable costs and attorneys' fees;

       (iii)      punitive damages; and

       (iv)      such other relief as this Court deems just and proper under the circumstances.

c.      On the **FIRST COUNT** through the **ELEVENTH COUNT** and the **THIRTEENTH COUNT** of the Complaint**,** awarding damages to the Plaintiff Jacqueline Borish Sinclair, as follows:

       (i)      compensatory damages including but not limited to damages for the grievous pain, emotional distress, physical manifestations of emotional distress, mental anguish, shame, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation and other damages suffered by the plaintiffs;

(ii)     reasonable costs and attorneys' fees;

(iii)     punitive damages; and

(iv)     such other relief as this Court deems just and proper under the circumstances.

d.     On the **TWELFTH COUNT** of the Complaint**,** awarding damages to the Plaintiffs in accordance with the Wrongful Death Act of the State of New Jersey, N.J.S.A. 2A:31-1 et seq., as follows:

(i)     compensatory damages as allowed by the Wrongful Death Act of the State of New Jersey;

(ii)     reasonable costs and attorneys' fees, and

(iii)     such other relief as this Court deems just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand trial by jury on all issues so triable against the defendants, individually and in their official capacities.

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**CAMARINOS LAW GROUP, LLC**

Dated:  June 28, 2018

By: */s/Michael D. Camarinos*
    Michael D. Camarinos, Esq.
411 Hackensack Avenue, 2nd Floor
Hackensack, New Jersey 07601
Telephone:  (201) 509-5000

*Attorneys for Plaintiffs*